No. 98-559

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 191N

IN RE THE MARRIAGE OF

DEAN KELLI FURUKAWA,

Petitioner and Appellant,

and

MAE WOO FURUKAWA,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Dean Kelli Furukawa, Billings, Montana (pro se)

For Respondent:

Christopher P. Thimsen, Billings, Montana

Submitted on Briefs: May 13, 1999

Decided: August 12, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases.**

**¶2. Dean Kelli Furukawa ("Dean") filed a petition for dissolution of marriage from his wife, Mae Woo Furukawa ("Mae"), in the Thirteenth Judicial District Court, Yellowstone County. After a trial, the court entered its findings of fact and conclusions of law, and Dean appeals. We affirm.**

**¶3. The Court has distilled three main issues from Dean's brief. First, Dean disputes the District Court's finding that Mae was unable to work outside the home due to her health condition. Dean contends that her medical condition was not disabling; that she could practice dentistry; and that therefore the court should impute income to her. We reject Dean's contentions.**

**¶4. According to Rule 46.30.1513(2)(d), ARM, "[i]ncome should not be imputed if any of the following conditions exist: . . . (ii) a parent is physically or mentally disabled to the extent that the parent cannot earn income at the federal minimum wage level for a 40 hour week." Consistent with the District Court's findings, the record reveals that Mae was diagnosed with autoimmune thyroiditis and chronic fatigue. Mae additionally testified that when she used to work, she suffered chest pains, heart palpitations, anxiety, nervousness, sleep loss and hair loss. Due to her chronic fatigue and other health problems, she stopped working fourteen years ago. Dr. Beeson, Mae's expert witness, testified that Mae could care for her children, but her health problems precluded her from working outside the home. This evidence was not refuted by any person other than by Dean himself. We hold that the District Court's finding that Mae was not able to work outside the home is not clearly erroneous, and that income should not be imputed to her.**

**¶5. Dean next challenges the District Court's decision to modify the parties' child**

custody agreement. Mae requested the modification to provide that their two children stay with her every Sunday evening starting at 5:00 p.m., rather than every other Sunday evening, in addition to the other times set forth in the agreement. Mae sought the modification so that she could help stabilize the children's schedule and bedtime routine to allow them to have a fresh start on Monday for the school week. She also wanted them to be with her for an extra evening so she could help balance their meals and cut down on the junk food they ate while with their father. The District Court agreed to Mae's request. It found that the parties' children have been sick numerous days from school on the Mondays after they have spent the weekend with Dean, and that the children have developed more cavities while in Dean's care. It concluded that the modification of the custody arrangement was in the best interests of the children.

¶6. We agree with the District Court. The record supports the court's finding that the children have been sick more often from school since Dean has provided part-time care for them. And the majority of their absences have been on the Mondays after the long weekends with their father. The record additionally indicates that since the parties' separation, one child has developed six cavities, and the other child has developed seven. Prior to the separation, the children had no cavities. In short, we hold that the District Court's findings are not clearly erroneous.

¶7. Finally, Dean challenges a number of the District Court's findings regarding the court's calculation of child support. His challenges lack merit. This Court has distilled the following seven challenges to the calculation of child support.

¶8. First, Dean contends that $71,000 is missing from Mae's funds. But the District Court found that he did not prove that monies were missing. A review of the record reveals that Dean offered no credible proof of this contention at trial. Indeed, all the financial information demonstrates consistent figures. Mae had recently inherited $380,000 from her grandfather. At the time of the trial, she had $282,000 remaining, and she fully accounted for the manner in which she spent the difference of $98,000. For example, she paid Dean his interest in the family home, paid the mortgage, purchased a car, and used money for living expenses. She also invested a portion of the money. We hold that the court's findings are not clearly erroneous.

¶9. Dean next asserts that the court granted an improper variance to Mae. He contends that the value of the family home, less the homestead exemption, should

have been used as an asset in the computation of child support payments. The District Court rejected his contentions and found that the house should be treated as a non-performing asset for purposes of child support. We agree. As the court noted, any equity Mae has in the house where the children are residing is not severable from the rest of the house. Selling the house would deprive Mae and her children of a home, and then require them to pay additional house payments or rent. We hold that the court did not abuse its discretion when it treated the house as a non-performing asset.

¶10. Third, Dean again asserts that income of $100,000 should be imputed to Mae, because fourteen years ago she practiced dentistry. He contends that Mae should therefore be required to pay him $781 a month in child support even though Mae has the children the majority of the time. But as we stated earlier, substantial evidence supports the court's finding that health problems precluded Mae from working outside the home.

¶11. Fourth, the court included Dean's bank account of $25,000 as an asset when calculating child support. Dean contends that he spent this money and that this should not have been considered as an asset. But Dean testified at trial that the $25,000 was in the bank in two certificates of deposit. We conclude that the court correctly included these accounts as an asset for child support calculations.

¶12. Fifth, Dean contends that the District Court used an incorrect number of custody days to calculate child support. He asserts that the parties agreed to share residential custody of the children on a 50/50 basis, and that the District Court therefore erred when it based its calculations on the fact that the children resided with Mae for 208 days (or 57% of the time) and with Dean for 157 days (or 43% of the time). But the District Court modified the custody schedule slightly to provide that the children will reside with Mae every Sunday evening, so the parties no longer share custody of the children on a 50/50 basis as Dean contends. We conclude that the court did not err in counting the custody days.

¶13. Sixth, Dean essentially asserts that the District Court erred in denying his post-trial motions to amend its findings of fact and conclusions of law. On October 30, 1998, the court entered an order stating:

Basically, what Mr. Furukawa wants is for the Court, through amendment or new trial, to

give him the decision he wanted as opposed to the decision the Court made. The evidence at trial does not justify Mr. Furukawa's requests and this case has run its course at the District Court level.

**¶14. Dean's contention lacks merit. The District Court's findings of fact are supported by substantial evidence, and Dean had ample opportunity at trial to submit his evidence. The court did not abuse its discretion by denying his post-trial motions.**

**¶15. Seventh, Dean asserts that the District Court incorrectly awarded Mae child support arrearages in the amount of $3,767.50. He contends that Mae was awarded over $500,000 in assets, tenfold what he was awarded, and that Mae did not make a full disclosure of her assets until the last day of trial. Again, his contentions lack merit.**

**¶16. Mae was not awarded ten times the amount of assets as Dean. She inherited money from her grandfather, which was not a part of the marital estate. Additionally, the parties signed an agreement on November 18, 1996, which stated that child support would be calculated according to the Montana Child Support Guidelines, and that the agreement would not take place until full disclosure by the parties. Mae made full disclosure of her inheritance on November 20, 1996, when the U.S. estate tax return for her grandfather was delivered to Dean's attorney. Additionally, this Court has already concluded that Dean's assertions that Mae has hidden assets are without merit. We conclude that the District Court correctly assessed child support arrearages.**

**¶17. When rendering its decision, the District Court made the following observation regarding Dean's attempts to get monies from Mae:**

It became clear during the course of the trial that Mr. Furukawa is interested in getting a portion of Ms. Furukawa's inheritance under the guise of child support, additional monies for property settlement, and attorney fees. Mr. Furukawa is asking Ms. Furukawa to pay to him child support in the amount of $781 per month even though Ms. Furukawa is unemployed and has the children the majority of the time. Also Mr. Furukawa is attempting to get another $47,000 from Ms. Furukawa for property settlement for alleged missing monies. The Court finds Mr. Furukawa did not prove that monies were missing.

In addition Mr. Furukawa is attempting to get $14,000 in attorneys fees from Ms. Furukawa. The Court finds, based on the testimony at trial, that Mr. Furukawa is simply attempting to get a portion of the inheritance monies that Ms. Furukawa received under the guise of child support.

**¶18. A review of the record reveals that the District Court's assessment of Dean's motives is accurate. The issues raised on appeal are frivolous, and it appears that Dean is once again simply attempting to get a portion of Mae's inheritance monies.**

**¶19. In this regard, Mae has filed a motion under Rule 32, M.R.App.P., requesting this Court to award her attorney's fees incurred in responding to this appeal, on the grounds that the appeal was undertaken without substantial or reasonable grounds. We are satisfied from the record and the presentation of the appeal that such damages are proper. Mae's motion is granted.**

**¶20. Based upon the foregoing, the District Court's findings of fact, conclusions of law and decree are affirmed. This case is remanded to the District Court for a determination of the amount of attorney's fees Mae reasonably incurred in responding to this appeal.**

**¶21. Affirmed and remanded for further proceedings consistent with this opinion.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ JIM REGNIER

No

/S/ TERRY N. TRIEWEILER